IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2018 Session

## TROY NICHOLAS v. TENNESSEE DEPARTMENT OF SAFETY AND HOMELAND SECURITY

Appeal from the Chancery Court for Davidson County
No. 14-1293-III     Ellen H. Lyle, Chancellor

_____

### No. M2017-01674-COA-R3-CV

_____

After police seized a vehicle allegedly used to transport drugs, the Tennessee Department of Safety and Homeland Security initiated forfeiture proceedings against the vehicle's owner. The owner filed a claim contesting the forfeiture proceedings, and the Department dismissed the claim as untimely. The owner petitioned for judicial review, and the trial court reversed the dismissal, reinstated the owner's claim, and remanded for a hearing. We affirm the trial court's decision.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which RICHARD H. DINKINS and JOHN W. MCCLARTY, JJ., joined.

Herbert H. Slatery, III, Attorney General & Reporter; Andrée S. Blumstein, Solicitor General; and Brooke Kathryn Schiferle, Assistant Attorney General, for the appellant, Tennessee Department of Safety and Homeland Security.

Charles E. Waldman, Memphis, Tennessee, for the appellee, Troy Nicholas.

### OPINION

#### I. FACTUAL AND PROCEDURAL BACKGROUND

Following a lengthy narcotics investigation, Memphis police arrested Kevin Watson on April 8, 2014, and charged him with conspiracy in the manufacture, delivery, and sale of hydromorphone ("Dilaudid"). During a search of Mr. Watson's residence, police seized several items, including a 2012 Kia Optima ("the vehicle") that police had observed Mr. Watson operating while he allegedly transported drugs. Kirby Evans was present when police conducted the search, and she claimed that the vehicle belonged to

her.  Police later learned that the vehicle was registered to Ms. Evans's fiancé, Troy Nicholas, at 4100 Brompton Road, Memphis, Tennessee.

At the time Mr. Nicholas registered the vehicle, he lived with Ms. Evans at the Brompton Road residence.  Prior to the events of this case, however, he relocated to Jefferson Parish, Louisiana for work, and that is where he resided at all times relevant to this case.  Nothing in the record suggests that Mr. Nicholas was involved with Mr. Watson in the alleged drug trafficking conspiracy.  The only connection between Mr. Nicholas and Mr. Watson was Ms. Evans.  Mr. Nicholas left his vehicle in her possession and care at the Brompton Road residence when he moved to Louisiana.  He did not update the vehicle's registration information to include his new address.  Unbeknownst to Mr. Nicholas, while he was working in Louisiana, Ms. Evans began a romantic relationship with Mr. Watson and allowed him to use the vehicle for nefarious purposes.

Following the seizure of the vehicle, the seizing officer prepared a notice of seizure identifying Mr. Watson as the person in possession of the vehicle, Mr. Nicholas and Ms. Evans as the owners of the vehicle, and Mr. Nicholas's address as 4100 Brompton Road.  Forfeiture proceedings began on April 15, 2014, with the issuance of a forfeiture warrant supported by an affidavit completed by the arresting officer.  After receiving these documents from the seizing officer, the Tennessee Department of Safety and Homeland Security ("the Department") sent a notice of the forfeiture proceedings, via certified mail, to Mr. Nicholas at the Brompton Road address, informing him of the forfeiture warrant and advising him that he had thirty days to file a claim to the vehicle. The notice was delivered to 4100 Brompton Road on May 16, 2014.  Julia Clark, a relative of Ms. Evans, accepted delivery of the notice.  She later gave the notice to Ms. Evans, who then mailed it to Mr. Nicholas in Louisiana.  Several days later, Mr. Nicholas received the unopened notice in Louisiana.

On June 19, 2014, Mr. Nicholas filed a petition requesting a hearing on his claim to the vehicle.  That same day, the Department sent a letter to Mr. Nicholas, dismissing his claim as untimely because he filed it more than thirty days after the notice was delivered to the Brompton Road address.  The Department entered a final order of forfeiture on July 10, 2014.  Mr. Nicholas filed a petition for reconsideration with supporting affidavits from himself and Ms. Evans; he argued that he timely filed his claim because the thirty-day time period to file a claim did not commence until he actually received the notice, which was no earlier than May 20, 2014.[1]  Specifically, he argued that, because he lived in Jefferson Parish, Louisiana rather than at 4100 Brompton Road, Ms. Evans had to forward the unopened notice to his Louisiana address, causing him to receive notice of the forfeiture no earlier than May 20, 2014.  Thus, he asserted,

---

[1]With regard to the date on which Mr. Nicholas received the notice in Louisiana, he merely stated in his affidavit that he "did not receive it before May 20, 2014."  Ms. Evans stated in her affidavit that she believed Mr. Nicholas could not have received the notice before May 20, 2014.

- 2 -

the June 19, 2014 petition was filed within thirty days of receiving the notice in Louisiana. The Department denied his petition for reconsideration on August 7, 2014.

Mr. Nicholas then filed a petition for judicial review in the Davidson County Chancery Court. He again submitted the affidavits from himself and Ms. Evans and argued that he timely filed his claim because he filed it within thirty days of receiving the notice in Louisiana. Relying on the holding in *Ally Financial v. Tennessee Department of Safety & Homeland Security*, 530 S.W.3d 659 (Tenn. Ct. App. 2017), the chancery court found that Mr. Nicholas timely filed his petition. In a memorandum and order entered on July 25, 2017, the court reversed the Department's dismissal of Mr. Nicholas's petition, reinstated the case, and remanded it to the Department for a contested hearing on Mr. Nicholas's claims.

II. STANDARD OF REVIEW

Our review of civil forfeiture proceedings is primarily governed by the Uniform Administrative Procedures Act, specifically Tenn. Code Ann. § 4-5-322. *McEwen v. Tenn. Dep't of Safety*, 173 S.W.3d 815, 819 (Tenn. Ct. App. 2005). Subsection (h) of that statute provides as follows:

> The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if the rights of the petitioner have been prejudiced because the administrative findings, inferences, conclusions or decisions are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority of the agency;
>
> (3) Made upon unlawful procedure;
>
> (4) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion; or
>
> (5)(A) Unsupported by evidence that is both substantial and material in the light of the entire record.
>
> > (B) In determining the substantiality of evidence, the court shall take into account whatever in the record fairly detracts from its weight, but the court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact.

Reviewing courts must, however, modify the above standard when applying it in forfeiture cases. *Urquhart v. State Dep't of Safety*, No. M2006-02240-COA-R3-CV, 2008 WL 2019458, at \*4 (Tenn. Ct. App. May 9, 2008); *McEwen*, 173 S.W. 3d at 819. Tennessee Code Annotated section 40-33-213 provides that judicial review of forfeiture proceedings "shall be conducted in the same manner as is provided in § 4-5-322," but reviewing courts "shall use the preponderance of evidence standard" rather than the substantial and material evidence standard "in determining whether to sustain or reverse the final order of the applicable agency." To satisfy the preponderance of the evidence standard, the proof must "show[] that the truth of the matter asserted is more probable than not." *Urquhart*, 2008 WL 2019458, \*5 (citing *Lettner v. Plummer*, 559 S.W.2d 785, 787 (Tenn. 1977), and *In re C.W.W.*, 37 S.W.3d 467, 474 (Tenn. Ct. App. 2000)). Thus, a reviewing court examines forfeiture proceedings under a less deferential standard than the substantial and material evidence standard. *Id.*

## III. ANALYSIS

The Tennessee Supreme Court has defined forfeiture as "'[t]he divestiture of property without compensation.'" *State v. Sprunger*, 458 S.W.3d 482, 492 (Tenn. 2015) (quoting BLACK'S LAW DICTIONARY 722 (9th ed. 2009)). In the present case, as in *Sprunger*, "the divestiture occurs because of a crime and title to the forfeited property is transferred to the government." *Id.* (citing BLACK'S LAW DICTIONARY 722 (9th ed. 2009)). Despite often being based on the same underlying facts as criminal prosecutions, forfeiture actions remain civil proceedings. *Id.* As a result, the Department only needs to prove "'by a preponderance of the evidence that the property is subject to forfeiture.'" *Id.* at 493 (quoting *Stuart v. State Dep't of Safety*, 963 S.W.2d 28, 34 (Tenn. 1998)).

Taking a person's property without compensation constitutes "an extraordinary exercise of the State's police power." *Id.*; *see also Redd v. Tenn. Dep't of Safety*, 895 S.W.2d 332, 335 (Tenn. 1995). Thus, although Tennessee law permits civil forfeitures, they are not favored and statutes authorizing them "'are to be strictly construed.'" *Sprunger*, 458 S.W.3d at 494 (quoting *Watson v. Tenn. Dep't of Safety*, 361 S.W.3d 549, 555 (Tenn. Ct. App. 2011)). "[S]trict compliance with our state's forfeiture statutes is not excused simply because the failure involves only 'technical violations' of the applicable statutes or the fact that the property owner is not prejudiced by the failure." *Ally Fin.*, 530 S.W.3d at 664 (citing *Sprunger*, 458 S.W.3d at 499). In addition to strictly complying with applicable statutes, forfeiture proceedings must also strictly comply with constitutional due process protections because the harsh nature of the proceedings implicates the Fifth and Fourteenth Amendments of the United States Constitution and Article 1, Section 8 of the Tennessee Constitution. *See Sprunger*, 458 S.W.3d at 493-94 (citing *Wells v. McCanless*, 198 S.W.2d 641, 642-43 (Tenn. 1947), and *Redd*, 895 S.W.2d at 334-35); *see also Ally Fin.*, 530 S.W.3d at 664. The Department bears the burden of satisfying due process requirements. *Sprunger*, 458 S.W.3d at 499.

The issue in the current case involves whether the Department complied with all statutory and constitutional requirements when it provided notice of the forfeiture proceedings to Mr. Nicholas. Our analysis begins with the requirements found in Tenn. Code Ann. §§ 40-33-204 and 40-33-206 that are relevant to this case.[2] Section 40-33-204 sets forth the requirements for the issuance of a forfeiture warrant. For instance, an affidavit supporting a forfeiture warrant shall state: "(1) the legal and factual basis upon which the property is seized; (2) information concerning co-owners of the property; and (3) information concerning any secured interests in the property and the factual and legal basis that makes the property subject to forfeiture notwithstanding the secured interest." *Ally Fin.*, 530 S.W.3d at 665 (citing Tenn. Code Ann. § 40-33-204(b)(1)(A)-(C)). Before issuing a forfeiture warrant, a judge must find probable cause that "[t]he property is subject to forfeiture" and, "[i]f the property is owned by one whose interest is described in public records of titles, registrations or other recorded documents, that the owner's interest is subject to forfeiture under the applicable provision of law." Tenn. Code Ann. § 40-33-204(c)(1).

If a forfeiture warrant is issued, the judge sends the warrant to the applicable agency, which must then "notify any other owner, as may be determined from public records of titles, registrations or other recorded documents, or secured party that a forfeiture warrant has been issued." Tenn. Code Ann. § 40-33-204(g). An owner asserting a claim to the seized property must then file a written claim with the agency "within thirty (30) days of being notified . . . that a forfeiture warrant has issued." Tenn. Code Ann. § 40-33-206(a). Seized property shall be forfeited "[i]f a claim . . . is not filed with the applicable agency within the time specified by this part." Tenn. Code Ann. § 40-33-206(c).

Neither Tenn. Code Ann. § 40-33-204 nor Tenn. Code Ann. § 40-33-206 specifically addresses the scope or method of the requisite notice. As a result, we look to the Department's administrative rules regarding these issues. These rules provide that the Department must search for all potential claimants entitled to receive notice and then send notification to all identified potential claimants at their last known address informing them that a forfeiture warrant has been issued. TENN. COMP. R. & REGS. 1340-02-02-.06(2)(a)-(c). In pertinent part, Tenn. Comp. R. & Regs. 1340-02-02-.06(2)(c) states that the notice must provide:

> the name of the potential claimant or secured party, the name of the person(s) in possession of the seized property, give a general description of the seized property, the reasons for the seizure, the procedure by which recovery of the property may be sought, including the time period in which

---

[2] For a more detailed discussion of the requirements of Tennessee's forfeiture statutes, see *Sprunger*, 458 S.W.3d at 494-99.

a claim or proof of security interest shall be filed . . ., and the consequences of failing to file within the time period.

Subsection (e) of this rule provides that, "[N]otice to a potential claimant or a secured party may be proven by any method used by the United States Postal Service to inform its users of the date of delivery of certified mail." TENN. COMP. R. & REGS. 1340-02-02-.06(2)(e). Finally, the Department's administrative rules provide that "seized property shall be forfeited to the state for disposition under the Act" if the Department does not receive a claim or proof of security interest "by the conclusion of the thirtieth (30th) day after the date of the potential claimant's or secured party's receipt" of a notice that a forfeiture warrant has been issued. TENN. COMP. R. & REGS. 1340-02-02-.06(2)(f).

The notice given by the Department must also comply with due process guarantees provided by the Tennessee and United States Constitutions. TENN. COMP. R. & REGS. 1340-02-02-.06(2)(e); *see also Ally Fin.*, 530 S.W.3d at 666. The Tennessee Supreme Court has stated that due process requires that parties having an interest in seized property be given adequate notice and a meaningful opportunity to be heard. *Redd,* 895 S.W.2d at 334-35. To satisfy due process, the notice "must be given in a manner reasonably calculated to notify all interested parties of the pending forfeiture of the property in order to afford the opportunity to object to the State's taking." *Id.*

In situations where the state knows the identity of a party with an interest in the proceedings, "any type of notice less reliable than mail will not satisfy minimum due process requirements." *Helms v. Greene*, No. 01A01-9505-CH-00194, 1997 WL 36846, at \*2 (Tenn. Ct. App. Jan. 31, 1997) (citing *Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962), and *Baggett v. Baggett*, 541 S.W.2d 407, 410 (Tenn. 1976)). Notice accomplished by mail is effective regardless of whether the addressee actually receives or reads the notice if the notice is otherwise valid. *Id.* at \*3; *see also Brown v. Tenn. Dep't of Safety*, No. 01-A-01-9102-CH00043, 1992 WL 63444, at \*4 (Tenn. Ct. App. Apr. 1, 1992) (stating that the proper inquiry to determine whether the state met its due process burden "'is whether the state acted reasonably in selecting a means likely to inform persons affected, not whether each property owner actually received notice'") (quoting *Weigner v. City of New York*, 852 F.2d 646, 649 (2d Cir. 1988)). Thus, due process does not require that a party with an interest in seized property actually receive the notice; the state only needs to choose "a means for giving notice that is reasonably contemplated to result in actual notice." *Helms*, 1997 WL 36846, at \*3.

Here, the Department sent the notice, via certified mail, to Mr. Nicholas at 4100 Brompton Road because that was the address provided in the vehicle's registration information. On one hand, the Department argues that notice was complete and the thirty-day time period for Mr. Nicholas to file a claim began to run on May 16, 2014, the date when the notice was delivered and signed for at 4100 Brompton Road. Mr. Nicholas, on the other hand, argues that the trial court correctly found that notice was

complete and the thirty-day time period to file a claim began to run when he received the notice in Jefferson Parish, Louisiana—no earlier than May 20, 2014.

The trial court relied on this court's holding in *Ally Financial v. Tennessee Department of Safety & Homeland Security* to conclude that Mr. Nicholas timely filed his claim after receiving the notice in Louisiana. *Ally Financial* involved forfeiture proceedings for a vehicle seized from its owner as drug-related proceeds. *Ally Fin.*, 530 S.W.3d at 661. The Department sent, via certified mail, notice of the seizure and forfeiture warrant to the finance company listed on the vehicle's certificate of title. *Id.* at 662. According to the vehicle's certificate of title and registration information, the finance company's address was P.O. Box 8116, Cockeysville, Maryland. *Id.* at 661. The Department asserted that it mailed the notice to this address, but the return receipt indicated that the notice was, in fact, delivered and signed for by an individual at P.O. Box 8100 on March 31, 2014. *Id.* 662. In a letter sent to the Department on October 23, 2014, nearly seven months later, the finance company contested the forfeiture of its interest in the vehicle and explained that its delay in responding to the notice was a result of the Department sending the notice to the wrong address. *Id.* Specifically, the finance company claimed that the notice should have been sent to its legal offices in Lewisville, Texas because the post office box in Maryland was "merely a call station." *Id.* The Department denied the request for a hearing, finding that the request was not filed within the statutory thirty-day period. *Id.* The finance company filed a petition for judicial review, asserting that the notice was inadequate because it was not delivered to the correct address. *Id.* The trial court reversed the forfeiture, finding that the Department failed to prove that the notice was delivered to the finance company on a particular date that would show the claim was not timely filed. *Id.* at 663.

On appeal, this court interpreted Tenn. Code Ann. § 40-33-205(a)[3] to determine whether the Department provided adequate notice of the forfeiture proceedings to the finance company. We stated, in pertinent part, as follows:

> As previously noted, the time for a secured party to file a claim under Tennessee Code Annotated section 40-33-205(a) does not begin to run until "*receipt* of the notice." Tenn. Code Ann. § 40-33-205(a) (emphasis added). *Black's Law Dictionary* defines "receipt" as "the act of receiving something[.]" BLACK'S LAW DICTIONARY 1382 (9th ed. 2009). Indeed, if a secured party "does not *receive* notice," then no time

---

[3] Tennessee Code Annotated section 40-33-205(a) provides, in pertinent part:

> If a secured party with a duly perfected security interest receives notification pursuant to § 40-33-204(g) that a forfeiture warrant has been issued with regard to the secured property, the secured party must submit proof of the security interest to the applicable agency within thirty (30) days of receipt of the notification in order for this subsection (a) to apply.

period begins to run to deprive the secured party of his ability to file a claim. *Id.* (emphasis added) ("A secured party with a duly perfected interest or any successor in interest to the secured party who does not receive notice of intent to forfeit the interest pursuant to § 40-33-204(b)(1)(C), need not file a claim to preserve any right the party may have to the property."). As such, we must apply the plain language of the statute indicating that the applicable time period commences on the date the notice of forfeiture is received. *See Holiday Inns, Inc. v. Olsen*, 692 S.W.2d 850, 853 (Tenn. 1985) ("If the rules and regulations promulgated by the [agency] are inconsistent with the statute, then they are void."); *Kaylor v. Bradley*, 912 S.W.2d 728, 734 (Tenn. Ct. App. 1995) ("Administrative regulations cannot be inconsistent with statutes on the same subject.").

*Ally Fin.*, 530 S.W.3d at 667-68. Thus, under Tenn. Code Ann. § 40-33-205(a), the thirty-day time period for the finance company to file a claim did not begin to run until it received the notice. *Id.* at 668.

Applying the holding in *Ally Financial* to the facts of this case, the trial court concluded that Mr. Nicholas timely filed his claim because he filed within thirty days of actually receiving the notice in Louisiana. On appeal, the Department argues that the trial court's reliance on the holding in *Ally Financial* was misplaced. We agree. *Ally Financial* involved a claim filed by a secured party under Tenn. Code Ann. § 40-33-205(a). That statute does not apply to this case because Mr. Nicholas is not a secured party. *See* Tenn. Code Ann. § 40-33-205(a). Instead, this case involves a claim filed under Tenn. Code Ann. § 40-33-206(a), which applies to "[a]ny person asserting a claim to any property seized" and provides its own thirty-day time period for filing a claim based on when the claimant is *notified*.[4] Thus, our task is to ascertain when the time for a party to file a claim under Tenn. Code Ann. § 40-33-206(a) begins to run rather than to apply the time period applicable under Tenn. Code Ann. § 40-33-205(a).

When construing statutes, our task is to "'ascertain and give effect'" to the Tennessee General Assembly's intent "'without unduly restricting or expanding'" the coverage of a statute beyond its intended scope. *Sallee v. Barrett*, 171 S.W.3d 822, 828 (Tenn. 2005) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002)). We look to the "plain and ordinary meaning of the statutory language" used to derive the legislature's intent. *Id.* We must construe the words used "in the context in which they appear in the statute and in light of the statute's general purpose." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010).

---

[4] Tennessee Code Annotated section 40-33-205(a) has a thirty-day time period for filing proof of a security interest running from "receipt of the notification."

If a statute's language is clear and unambiguous, we "need not look beyond the statute itself to ascertain its meaning." *Id.* at 527. When the language is ambiguous, however, "we must resort to the rules of statutory construction and other external sources to ascertain the General Assembly's intent and purpose." *Lee Med., Inc.*, 312 S.W.3d at 527. An ambiguity exists "when a statute is capable of conveying more than one meaning." *Najo Equip. Leasing, LLC v. Comm'r of Revenue*, 477 S.W.3d 763, 768 (Tenn. Ct. App. 2015).

Unlike the statute involved in *Ally Financial*, Tenn. Code Ann. § 40-33-206(a) provides that the thirty-day time period for a party to file a claim begins to run upon "being *notified*." (Emphasis added). *Black's Law Dictionary* defines "notify" as "[t]o give notice of." BLACK'S LAW DICTIONARY (10th ed. 2014). "Notice" is defined as the "[l]egal notification required by law or agreement, or imparted by operation of law as a result of some fact (such as the recording of an instrument)." *Id.* As discussed above, the notice required by law is that which satisfies all statutory and constitutional requirements. Thus, the thirty-day time period to file a claim pursuant to Tenn. Code Ann. § 40-33-206(a) commences on the date a party is given notice satisfying all statutory and constitutional requirements.[5]

Here, the parties do not dispute that the Department satisfied the statutory requirements. Instead, they disagree about when, or if, the Department satisfied state and federal due process requirements. The Department knew that Mr. Nicholas had an interest in the vehicle because he was its registered owner. Thus, at a minimum, the Department was constitutionally required to give Mr. Nicholas notice of the forfeiture proceedings by mail. *See Helms*, 1997 WL 36846, at *2-3. The Department sent notice of the forfeiture proceedings, via certified mail, to Mr. Nicholas at 4100 Brompton Road—the address he listed when registering the vehicle. The notice was delivered to this address and was signed for by Ms. Clark on May 16, 2014. Courts typically do not consider sending a letter to a party's last known address to constitute adequate notice if the sender knows "that the person no longer lives at that address" and if the person's new address is known or easily ascertainable. *Helms*, 1997 WL 36846, at *3. Despite relocating to Jefferson Parish, Louisiana, Mr. Nicholas never updated the vehicle's registration information to reflect that he no longer resided at 4100 Brompton Road. Consequently, the Department did not know, and had no reason to know when it mailed the notice, that Mr. Nicholas no longer lived at that address. The Department, therefore, acted reasonably in mailing the notice to 4100 Brompton Road because this means for giving notice was "reasonably contemplated to result in actual notice." *Id.* If the notice

---

[5] Tenn. Comp. R & Regs. 1340-02-02.06(2)(f) provides that seized property will be forfeited "by the conclusion of the thirtieth (30th) day after the date of the potential claimant's or secured party's receipt" of a notice. The regulation impliedly equates the requirement of "being notified" in Tenn. Code Ann. § 40-33-206(a) with "receipt" of the notice at the address given to the Department. In the large majority of instances, this is not an issue.

was otherwise valid, the thirty-day time period for Mr. Nicholas to file a claim commenced when the notice was delivered to 4100 Brompton Road on May 16, 2014, even though he did not actually receive the notice until it was delivered in Jefferson Parish, Louisiana on or after May 20, 2014.[6] *See Id.* ("An otherwise valid notice that has been mailed is effective even if the addressee has not actually received or read the notice.").

We must now determine whether the notice was otherwise valid. Mr. Nicholas asserts that the notice was not otherwise valid because it was inadequate due to inaccurate or misleading information. Specifically, he asserts that the notice did not adequately inform him of the applicable time period he had to file a claim contesting the forfeiture action. The notice the Department sent to Mr. Nicholas stated, in relevant part:

> A forfeiture warrant has been issued against property in which you have been identified as having an interest. . . .
>
> The vehicle or other property described on the Notice of Seizure form was seized in accordance with T.C.A. § 40-33-201 *et. seq.*, upon reasonable belief that said vehicle or other property was used or intended for use to transport or in some manner to facilitate the sale or receipt of controlled substances or that said property was otherwise used or intended for use in violation of T.C.A. § 53-11-451. The vehicle or other property described on the Notice of Seizure will be forfeited and subject to public sale or other lawful disposition *after thirty (30) days from receipt of this notice* unless any claimant to the seized goods shall file with the Commissioner of Safety, a claim in writing stating his interest in the seized goods and requesting a hearing pursuant to T.C.A. § 40-33-210 *et. seq.*

(Emphasis added). Receipt is defined as "[t]he act of receiving something, esp[ecially] by taking physical possession." BLACK'S LAW DICTIONARY (10th ed. 2014). Thus, the notice indicated that the thirty-day time period for Mr. Nicholas to file a claim began to run on the date he actually received the notice—which was no earlier than May 20, 2014.

---

[6] In applying the holding in *Ally Financial* to conclude that Mr. Nicholas timely filed his claim, the trial court placed significant weight on the affidavits of Mr. Nicholas and Ms. Kirby stating that Mr. Nicholas did not actually receive the forfeiture notice until it was forwarded and delivered to him in Louisiana. Specifically, the court found that, with these affidavits, Mr. Nicholas overcame the presumption that "'a letter duly mailed is received by the one to whom it is addressed.'" *Ally Fin.*, 530 S.W.3d at 669 (quoting *MacDonald v. Smith*, No. 88-304-II, 1990 WL 3345, at *1 (Tenn. Ct. App. Jan. 19, 1990)). Because we conclude that the thirty-day time period to file a claim pursuant to Tenn. Code Ann. § 40-33-206(a) commences on the date a party is given notice satisfying statutory and constitutional requirements, not on the date that the notice was received by a party, it is irrelevant whether the notice was received by Mr. Nicholas at 4100 Brompton Road on May 16, 2014 or in Jefferson Parish, Louisiana no earlier than May 20, 2014. As such, the presumption applied in *Ally Financial* is inapplicable to the facts of this case.

Due process, as previously mentioned, requires adequate notice and a meaningful opportunity to be heard. *Redd,* 895 S.W.2d at 334-35. Notice "must be given in a manner reasonably calculated to notify all interested parties of the pending forfeiture of the property in order to afford the opportunity to object to the State's taking." *Id.* Moreover, "[t]he notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance." *Mullane v. Cent. Hanover Bank & Trust,* 339 U.S. 306, 314 (1950) (citations omitted).

In these peculiar circumstances, the information set forth in the notice of forfeiture proceedings constitutes a misleading characterization of the commencement of the applicable time period to file a claim that may, as occurred in this case, lead unsuspecting claimants to believe they have longer to file a claim than they, in fact, have. Therefore, the notice does not afford a meaningful opportunity to be heard and is insufficient to satisfy due process. Because the notice in this case was not otherwise valid, the thirty-day time period to file a claim did not begin to run on May 16, 2014, the date it was delivered to 4100 Brompton Road. We conclude that the trial court did not err in reversing the dismissal, reinstating Mr. Nicholas's claim, and remanding the case for the Department to conduct a hearing on his claims.[7]

IV. CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Tennessee Department of Safety and Homeland Security.

_____
ANDY D. BENNETT, JUDGE

---

[7] We "may affirm a judgment on different grounds than those relied on by the trial court when the trial court reached the correct result." *Midwestern Gas Transmission Co. v. Reese*, No. M2005-00805-COA-R3-CV, 2006 WL 468688, at *8 n.20 (Tenn. Ct. App. Feb. 24, 2006).